IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEA BASSETTI, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 17-1137 |
| | : | |
| v. | : | |
| | : | |
| BOYERTOWN AREA SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION**

Smith, J.  August 14, 2017

A stigma-plus claim brought pursuant to 42 U.S.C. § 1983 involves reputational injury suffered when a public employer creates and disseminates a false and defamatory impression concerning a public employee (the stigma), in conjunction with terminating or constructively discharging the employee (the plus).

Here, the plaintiff, a teacher, *voluntarily* left her employment at Boyertown Area School District ("Boyertown").  She now asserts a stigma-plus claim against Boyertown, alleging that she suffered a constitutional deprivation in the form of reputational injury when a Boyertown employee made defamatory statements about her to employees of Pottstown School District ("Pottstown"), that subsequently caused Pottstown to refuse to finalize her employment there. She further alleges that Boyertown is liable under a *Monell* theory for the actions of its employee because (1) it failed to train its employees not to make defamatory statements about other employees, or (2) it failed to have a policy to prevent employees from making defamatory statements about other employees, or (3) a supervisor employed by Boyertown personally ratified the statements made in the telephone call.

Boyertown moves to dismiss the complaint, contending that (1) the plaintiff's underlying claim of constitutional deprivation (stigma-plus) fails as a matter of law, and (2) the plaintiff fails to plead a sufficient basis for section 1983 *Monell* liability against it. As explained below, the court will dismiss the complaint for failure to state an underlying constitutional deprivation, as the plaintiff's stigma-plus claim relies on Pottstown's refusal to finalize her hire, rather than any employment action by Boyertown.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

From August 2008 until May 2016, the plaintiff, Dea Bassetti ("Bassetti"), was a middle school math and high school business teacher in the Reading School District. First Amended Complaint ("Am. Compl.") at 3, Doc. No. 13. In May 2016, Bassetti resigned from her position with the Reading School District and began applying for different teaching positions. *Id*. Bassetti interviewed with, and ultimately was offered, teaching positions at the Renaissance Academy Charter School and with the defendant, the Boyertown Area School District. *Id*. The position at the Renaissance Academy Charter School was a permanent teaching position, while the position at Boyertown was a long-term substitute position that was to start at the beginning of the school year and end in February 2017. *Id*.

In August 2016, while Bassetti was considering which position she wanted to accept, she received a phone call from Ciara Talarico ("Talarico"), a teacher at Boyertown, and Talarico told Bassetti she would be Bassetti's "mentor" teacher. *Id*. After the phone call, Bassetti decided that she wanted to work for Boyertown. *Id*. at 4. Although Bassetti knew the position at Boyertown would be a long-term substitute position, she accepted it because she was confident that it would become permanent based on statements made by Talarico that the teacher on leave was likely not returning. *Id*. at 3-4.

Bassetti started teaching at Boyertown in August 2016. *Id*. at 5. The relationship between Bassetti and Talarico started off well, and Talarico told Bassetti things about her personal life, including that Dr. Brett Cooper ("Dr. Cooper"), the principal at Boyertown, "would give her whatever she needed and that she had him 'wrapped around her finger.'" *Id*. Two weeks into the school year, however, Talarico "started to hate" Bassetti. *Id*. Bassetti could tell Talarico hated her because she would not say hello to her in the hallway, and another teacher, Mr. Hiryak, told Bassetti "things" that Talarico would say to him about her and said that Talarico was jealous of her. *Id*. Bassetti believes that Talarico "hated" the fact that the students liked Bassetti more than her. *Id*. Other staff members also told Bassetti that Talarico referred to her as "the hottie" and said that male teachers liked her and asked her out. *Id*.

By November 2016, Bassetti started looking for a new teaching position because it appeared that the teacher who was on leave would be returning and, as such, Bassetti's temporary teaching position would end in February 2017. *Id*. As part of her search, she applied to the Pottstown School District for a permanent teaching position. *Id*. at 6. After interviewing at Pottstown, Deena Cellini ("Cellini"), Pottstown's Director of Human Resources, offered Bassetti a teaching position on December 13, 2016. *Id*. at 6-7. Bassetti accepted the position and was told to start on December 15, 2016. *Id*. at 8. Later that day, Bassetti informed Dr. Cooper that her last day at Boyertown would be December 14, 2016. *Id*. at 7. On December 14, 2016, Bassetti went to Pottstown and filled out her new hire paperwork. *Id*.

On December 15, 2016, Bassetti reported to Pottstown for her first day of work, and at the end of the teaching day, she was asked to report to the principal's office for a meeting. *Id*. At the meeting, Cellini told Bassetti that "they received a phone call [earlier that day] from someone at Boyertown" who made allegations that had "something to do with [Bassetti's] planning, alleged inappropriate contact and language with students, and bad mouthing staff

3

members." *Id*. at 7-8. Cellini would not tell Bassetti who made the phone call, but Bassetti believes that Talarico made the call. *Id*. at 8. Bassetti also believes that Talarico made the call with the authority or knowledge of Dr. Cooper, based on her prior comment that she had him "wrapped around her finger." *Id*. Alternatively, Bassetti believes that another employee or employees made the call with the authority or knowledge of Dr. Cooper, or that an actual decision-maker at Boyertown made the call. *Id*. Cellini told Bassetti that because of the phone call, she would not present Bassetti's name for hiring approval to the school board at the monthly meeting scheduled for that evening. *Id*. Cellini also told Bassetti that Pottstown was very careful about whom it hires, and because of the allegations contained in the telephone call, it was no longer offering her employment. *Id*.

Bassetti filed suit against Boyertown on March 15, 2017, bringing a stigma-plus claim pursuant to 42 U.S.C. § 1983 arising from the alleged defamatory statements made about her to Pottstown, and Pottstown's subsequent refusal to finalize her employment. Complaint ("Compl.") at 1, 7-9, Doc. No. 1. Boyertown filed a motion to dismiss for failure to state a claim on April 13, 2017, and Bassetti filed a response to the motion on May 12, 2017. Doc. Nos. 5, 10. The court granted Boyertown's motion on May 17, 2017, dismissing the complaint without prejudice for Bassetti's failure to allege a basis for municipal liability. Am. Order, Doc. No. 12.

Bassetti filed an amended complaint against Boyertown on May 31, 2017, again bringing a stigma-plus claim pursuant to section 1983, arising from the alleged defamatory statements made about her to Pottstown, and Pottstown's subsequent refusal to finalize her employment. Am. Compl. at 1, 7-12. Boyertown filed the instant motion to dismiss for failure to state a claim on June 14, 2017, contending that Bassetti (1) failed to adequately plead a basis for section 1983 liability, and (2) failed to state an underlying constitutional deprivation. Mem. of Law in Support of Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("MTD") at 8, Doc. No. 14. Bassetti filed a

4

response to the outstanding motion on July 12, 2017, and the court heard oral argument on the motion on July 25, 2017. Doc. Nos. 17-19. The motion to dismiss is currently ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more

5

than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Third Circuit employs a three-step approach to evaluate whether a complaint satisfies the *Twombly/Iqbal* standard:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal footnote omitted).

### B. Analysis

"Section 1983 provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. County of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (citing 42 U.S.C. § 1983). "[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Benn v. Universal Health Sys.*, 371 F.3d 165, 169–70 (3d Cir. 2004)). "Accordingly, there can be no cause of action under § 1983 absent violation of a right secured by the Constitution or the laws of the United States." *Reichley v. Pennsylvania Dep't of Agric.*, 427 F.3d 236, 244 (3d Cir. 2005).

When evaluating section 1983 claims,

> "[t]he first step . . . is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5, 118 S.Ct. 1708, 1714 n.5, 140 L.Ed.2d 1043 (1998)). Next, a plaintiff must demonstrate a defendant's "personal involvement in the alleged wrongs." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's

participation in or actual knowledge of and acquiescence in the wrongful conduct. *Id.* Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive. *Baker v. Monroe Twp.,* 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode,* 845 F.2d at 1201 n.6. A plaintiff "must portray specific conduct by state officials which violates some constitutional right." *Gittlemacker v. Prasse,* 428 F.2d 1, 3 (3d Cir. 1970).

*Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).

Here, Bassetti asserts a section 1983 claim based on a stigma-plus theory, Am. Compl. at 9-12, and Boyertown seeks dismissal, arguing that (1) Bassetti's underlying claim of constitutional deprivation (stigma-plus) fails as a matter of law, and (2) Bassetti fails to plead a sufficient basis for section 1983 liability against Boyertown. MTD at 8-10. Because the first step is evaluating a section 1983 claim is to determine whether the plaintiff alleges a constitutional deprivation, the court will first consider whether Bassetti states a stigma-plus claim.

A stigma-plus claim is "a due process claim for deprivation of a liberty interest in reputation[.]" *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). It "is premised on an alleged harm to a public employee's liberty interest in her reputation caused by her public employer's adverse employment action." *Berkery v. Wissahickon Sch. Bd.*, 99 F. Supp. 3d 563, 572 (E.D. Pa. 2015) (citing *Hill*, 455 F.3d at 235). "In the public employment context, the stigma-plus test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest." *Hill*, 455 F.3d at 236 (internal quotation marks and citation omitted). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Id*.

"[T]o satisfy the stigma prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Id*. at 236 (internal

quotation marks and citations omitted). To satisfy the plus prong of the test, a plaintiff must allege that she was terminated or constructively discharged, but she need not allege a property interest in the job that she lost. *See id*. at 238 ("We therefore conclude today that a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost."); *see also Paterno v. Pennsylvania State Univ.*, 149 F. Supp. 3d 530, 541 (E.D. Pa. 2016) (summarizing United States Supreme Court and Third Circuit Court of Appeals jurisprudence with respect to the plus element of a stigma-plus claim).

As to the stigma element of Bassetti's stigma-plus claim, Bassetti alleges that a Boyertown employee made defamatory statements about her to a third party (a Pottstown employee), and that those statements were false. Am. Compl. at 7-8, 11. Therefore, Bassetti satisfies the stigma element of her stigma-plus claim. *See, e.g.*, *Povish v. Pennsylvania Dep't of Corr.*, No. CIV. A. 13–0197, 2014 WL 1281226, at *5 (E.D. Pa. Mar. 28, 2014) (collecting cases and noting that to satisfy the publication requirement in stigma-plus claim, "[d]epending on the facts, quite limited dissemination may be sufficient.").

Regarding the plus element, Bassetti alleges that Pottstown, her prospective employer, refused to finalize her employment as result of the statements made by the Boyertown employee. *Id*. at 8. Crucially (and fatal to her stigma-plus claim), Bassetti does not allege that Boyertown (the entity that she claims is responsible for the stigmatizing statements) terminated her.

In Bassetti's opposition memorandum, and as set forth in greater detail by her counsel at oral argument, she contends that she can satisfy the pleading requirements for a stigma-plus claim without alleging that Boyertown performed both the stigma and the plus elements. *See* Brief in Opp. to Def.'s Mot. to Dismiss Pl.'s Am. Compl. ("Opp.") at 13. She argues that a termination from any public employment, even if it is not a termination by the employer

8

responsible for the stigmatizing statements, is sufficient to satisfy the plus element of a stigma-plus claim. *Id*. In support of her position, Bassetti relies heavily on *Fouse v. Beaver County*, No. 2:14-CV-810, 2015 WL 1967242, at *1 (W.D. Pa. May 1, 2015). Nonetheless, after reviewing *Fouse*, it does not appear to offer any support for her position that a third-party termination can satisfy the plus element in a stigma-plus claim.

In *Fouse*, the plaintiff, a Sergeant at the Beaver County Correctional Facility ("BCCF") brought, *inter alia*, a stigma-plus claim against (1) BCCF, (2) his direct supervisor at BCCF, and (3) BCCF's Warden, stemming from statements made about him by the supervisor and Warden in conjunction with his termination from BCCF. *Fouse*, 2015 WL 1967242, at *1-3. In support of his claim, the plaintiff alleged that BCCF terminated him, and on the same day (1) his supervisor at BCCF made false statements about him at a public prison board meeting, and (2) BCCF's Warden made false statements about him to his secondary employer, which caused the secondary employer to force his resignation from his position there as well.[1] *Id.* at *4.

As to the stigma element, the *Fouse* court first analyzed the statements made at the public prison board meeting and determined that because "each statement either contain[ed] no mention of [the plaintiff], [was] immaterial, or could not plausibly cause reputational harm[,]" the statements did not satisfy the stigma element. *Id.* Continuing with the stigma element, the court next turned to the alleged statements made by BCCF's Warden to the plaintiff's secondary employer, in which the plaintiff alleged that BCCF's Warden told his secondary employer that he "was involved with the theft of the missing money, and that he was going to be charged in the incident." *Id*. at *5. The court held that these statements were sufficient to satisfy the stigma element, noting: "If allegations of harm to future employment possibilities are sufficient to withstand a motion to dismiss in the stigma-plus context, as our Court of Appeals has held, . . .

---

[1] The plaintiff also worked a second job as an employee of the Conway Police Department. *Id*. at *2.

then [the] [p]laintiff[']s claim that he lost his current secondary employment as a result of the defamatory statements also meets this test." *Id*. at *6.

As to the plus element, the *Fouse* court held that the plus element was satisfied by the sergeant's termination by BCCF. *Id*. at *7 (noting that "[the plaintiff's] termination from his public employment at [BCCF] meets [the plus] prong with regard to the allegations against [BCCF's Warden]." Notably, the *Fouse* court did not hold that the plus element was satisfied by the plaintiff's loss of his secondary employment. In fact, the defendants raised concerns over the possibility that the plaintiff was attempting to impermissibly rely on his forced resignation by the secondary employer to satisfy the plus element. *Id*. at *7 n. 14. In addressing this concern, the district court noted:

> In their Supplemental Brief, Defendants . . . argue that [the plaintiff's] claim cannot stand because his "plus" prong is framed as the discharge from his secondary employment, rather than from his employment with the County. As noted above, the forced resignation from his secondary employment in fact is part of the "stigma" prong, as it demonstrates the loss of a concrete job opportunity resulting from [the Warden's] statement to [the secondary employer]. The "plus" remains his discharge from [BRCC], which [the Warden] also carried out.
>
> Because [the plainitiff's] alleged "plus" is still his termination from [BCCF], the case cited in support of [the] [d]efendants' argument is distinguishable. They point to *Grimm v. City of Uniontown*, No. 06–1050, 2008 WL 282344 (W.D. Pa. Jan. 31, 2008), explaining that there, the court held no stigma-plus claim could lie against a County when its police officers arrested the plaintiff, a Captain in the United States Army, because of punishment the Army inflicted on him despite the fact that the charges against him were dropped. Unlike in *Grimm*, where the plaintiff attempted to assert a stigma-plus claim against the County for the stigma of the arrest and the arguable "plus" was the punishment inflicted by the Army, here [the plaintiff] alleges that [the Warden] stigmatized him through his statements made to [the plaintiff's secondary employer] and the resulting loss of that job, in conjunction with his termination from [BCCF][.]

*Id*. (internal citations omitted).

The Third Circuit has not expressly ruled on the issue of whether a third party termination can satisfy the plus element of a stigma-plus claim. However, the Third Circuit's

10

definition of a stigma-plus claim in *Hill v. Borough of Kutztown*, combined with the underlying facts of that case, can be read to imply that the actions constituting the stigma and the plus must both be performed by the defendant-employer. *See* 455 F.3d at 236 (defining a stigma-plus claim as arising "when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination[,]" in a case involving an employee who sued his former employer for terminating him and allegedly making false statements about him).

Furthermore, the plaintiff does not cite (and the court likewise has not identified) any authority indicating that a plaintiff may bring a stigma-plus claim against a party that did not actually carry out the termination, i.e. the plus. However, at least one other district court within the Third Circuit has concluded that third party terminations cannot satisfy the plus element. *See Grimm*, No. CIV. A. 06-1050, 2008 WL 282344, at *30. In *Grimm*, the court noted:

> In all of the Supreme Court and Third Circuit cases [that the court cited in its opinion], a government employer defamed an employee in the process of taking an adverse action against him. Here, by contrast, Plaintiff has alleged that the named Defendants (the City of Uniontown, its police department and three individual officers) defamed him, which induced his employer (the United States Army) to take certain adverse employment actions against him. The Defendants in this case were not in a position to take any adverse employment action against Plaintiff because they did not employ him and the entity that did (the Army, which is a governmental employer, although not a "state actor") is not named as a defendant in this case.

*Id*.

Because Bassetti does not allege that Boyertown terminated her employment and, thus, the alleged defamatory statements could not have been made in connection with her termination of employment at Boyertown, she fails to state a stigma-plus claim. Without a stigma-plus claim, Bassetti has not alleged the underlying constitutional deprivation necessary to hold Boyertown liable under section 1983. Moreover, because Bassetti's failure to allege a stigma-

11

plus claim is dispositive of her section 1983 claim, the court need not consider whether she has sufficiently pleaded a basis for section 1983 liability, under a *Monell* theory, against Boyertown.

## C. Leave to Amend

Bassetti requests leave to file a second amended complaint in the event that the court finds deficiencies in the pleadings, noting that the court's ruling on the instant motion to dismiss represents the first time that the court addresses the merits of her stigma-plus claim. Opp. at 15. Federal Rule of Civil Procedure 15 provides, in pertinent part, that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). In interpreting Rule 15, the Third Circuit has noted:

> While this Rule also requires that leave to amend should be "freely given," a district court has the discretion to deny this request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). While a District Court has substantial leeway in deciding whether to grant leave to amend, when it refuses this type of request without justifying its decision, this action is "not an exercise of its discretion but an abuse of its discretion." *Id*.

*Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000).

Here, the court dismisses Bassetti's stigma-plus claim because she relies on an employment action by Pottstown to satisfy the required plus element of her claim, and the law does not permit her to do so. If the court were to permit Bassetti to amend her stigma-plus claim, the only way that she could rehabilitate it would be to allege that Boyertown terminated her. However, Bassetti does not, and cannot allege this, as she admits that she voluntarily left her employment at Boyertown. Am. Compl. at 7. Therefore, permitting Bassetti to amend her stigma-plus claim would be futile. Accordingly, the court will dismiss Bassetti's stigma-plus claim, as brought against Boyertown under a *Monell* theory, with prejudice.

### III. CONCLUSION

As explained above, because Bassetti relies on an employment action by Pottstown to satisfy the plus element of her stigma-plus claim against Boyertown, the court finds that she has failed to state a cognizable stigma-plus claim. Accordingly, Bassetti has failed to allege an underlying constitutional deprivation and, therefore, the court must dismiss her section 1983 claim. Because the court finds that permitting Bassetti to amend her stigma-plus claim would be futile, the court will dismiss her complaint, with prejudice.

A separate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.